**Willie James BREWSTER, John Ellis Sutton and Cheri Ann Lee, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 64333, 64335.**

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 17, 1980.

Rehearing Denied Oct. 22, 1980.

---

W. B. "Bennie" House, Jr., Houston, court appointed, for appellants.

John B. Holmes, Jr., Dist. Atty., Joan Fisher and Ken Sparks, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Appeal follows conviction upon pleas of nolo contendere for the offense of possession of hydromorphone (appellants Brewster and Lee) and possession with intent to deliver hydromorphone (appellant Sutton) and assessments of punishment at confinement in the Texas Department of Corrections for terms of years, with probation granted Brewster and Lee but not Sutton.

Each appellant makes two complaints: One, that the trial court erred in denying a motion to suppress evidence seized during the course of a search following a warrantless arrest. Two, that the evidence is insufficient to support a finding of guilt upon a plea of nolo contendere. These complaints come to us from somewhat unusual proceedings which we first place in context with a summary of events surrounding the offenses alleged.[1]

Beginning about 11:00 o'clock a.m. on the morning of August 1, 1978, in and around a pharmacy on Southmore Street in Pasadena, Houston Police Officer Dale Dugger, then assigned in plain clothes to the narcotics organized crime unit, observed behavior and activity on the part of several of the five persons involved in these offenses that led him to suspect they were, in parlance of the street, "busting scripts."[2] While inside the pharmacy Dugger noticed the first of the five suspects respond to two different names called out by the pharmacist after

---

1. There was a hearing on motions to suppress at which the investigating officer and another testified as to developments leading to the warrantless arrest and search. The motion was denied and three days later during the plea hearing the parties orally stipulated the prior testimony given by the two officers at the motion hearing. Our summary is from their testimony.

2. Dugger's presence in this particular pharmacy was more than fortuitous. With his minor son he went there to have two prescriptions filled for his son, but he selected the pharmacy because he had previously been informed through sworn statements and other sources that the owner of the pharmacy, a certain doctor officing also on Southmore Street and other persons were carrying out a scheme to dispense through falsified prescriptions supplied by the doctor such controlled substances as Preludin, Quaalude and Dilaudid. One method was for a principal third party to obtain numerous prescriptions naming persons, real or dead, then to enlist still others for a consideration to go to the pharmacy and get them filled and deliver the drugs to the principal, presumably for resale.

two prescriptions had been filled; the next suspect, our appellant Sutton, picked up a prescription in a name other than his own; both returned to a 1976 Cadillac automobile occupied by the other three suspects including our appellants Brewster and Lee. Dugger drove his unmarked police unit to a nearby phone and called an officer of the Pasadena Police Department, Lt. Sidney Smith, for assistance; he also learned from a radioed check that the 1976 Cadillac was registered to the wife of the suspect Pasadena doctor; meanwhile he watched the pharmacy premises and saw persons singly leave the Cadillac, enter the pharmacy and return with a white paper sack. After Lt. Smith arrived the Cadillac with its five occupants left the place, only shortly thereafter to be stopped at Smith's instruction by a uniformed officer in a marked patrol car. The occupants were removed and searched; the Cadillac was searched; controlled substances and other materials were seized.[3]

Officer Dugger, after relating every observation, fact and circumstance that collectively led him to call Lt. Smith for assistance and to cause the Cadillac to be stopped, candidly admitted he had no reason for doing so "other than ... [his] ... suspicion." Just as frankly he conceded that "the whole purpose in stopping that car was to see what they had in the sacks."[4] While we cannot know for sure, see note 3, in the sacks must have been bottles that contained an aggregate of 480 hydromorphone tablets.

At the plea hearing each appellant and their respective attorneys executed and the trial court approved a modified form stipulation, waiving confrontation, consenting to oral stipulation of evidence, waiving right against self–incrimination and stipulating "that if *the witnesses* were here and sworn to testify that they *would testify* that on August 1, 1978, in Harris County, Texas, *I did intentionally and knowingly possess* a controlled substance, namely *Hydromorphone*,"[5] adding in Sutton's case "with intent to deliver." Also during the hearing the parties orally stipulated not only the prior testimony of the two officers but also that if a named chemist were called he would testify that from his analysis the 480 tablets recovered August 1, 1978 from the 1976 Cadillac occupied by the five original accused (including our three appellants) were in fact hydromorphone.

In taking the pleas the trial court admonished each accused that the form stipulation signed by each is "the same thing as a *judicial confession*." Each accused personally answered affirmatively the query of the trial court whether the stipulation introduced in evidence by the State is "your stipulation." Otherwise, there is no written confession in our record nor did any appellant testify.

■ Appellants now contend that the stop of the Cadillac and their detention, amounting to a warrantless arrest,[6] was not authorized by law. The State, however, makes a threshold assertion that the arrest issue need not be addressed since none of

3. Our record does not connect any item seized to a specific occupant of the Cadillac because pursuant to some character of agreement between counsel the witnesses at the suppression hearing were not questioned "as to the exact location in which the particular items were found in the trunk, car or on the person of the occupants."

4. Dugger had acknowledged that as he watched the first two suspects claim their sacks he could not "in fact tell what was in the bottle," nor whether they were getting prescriptions filled for someone else–a perfectly legal procedure, *Posey v. State*, 545 S.W.2d 162, 164 (Tex.Cr.App. 1977). As to the other suspects, Dugger never identified them as hav-

ing filled prescriptions; indeed, as we understand his testimony, he was not in the pharmacy after seeing the second suspect, Sutton, there.

5. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

6. Article 15.22, V.A.C.C.P., provides that a person is arrested "when he has actually been placed under restraint ... by an officer ... arresting without a warrant." Thus, an arrest is complete when one's liberty of movement is restricted or restrained, *Hardinge v. State*, 500 S.W.2d 870, 873 (Tex.Cr.App. 1973).

the fruits of the ensuing search was introduced in evidence at the plea hearing, citing, e. g., *Ferguson v. State*, 571 S.W.2d 908, 909 (Tex.Cr.App. 1978); *Stiggers v. State*, 506 S.W.2d 609, 611 (Tex.Cr.App. 1974). These cases teach that an erroneous ruling on a motion to suppress will not vitiate a conviction where the evidence sought to be suppressed is not introduced and the guilty plea is supported by other evidence independently of that contested by the motion.

Here, though, while the 480 tablets were not offered, there was admitted stipulated testimony of the chemist who analyzed that they were hydromorphone. It would seem that his testimony is as much fruits of the arrest and search and certainly more critical than admission of the tablets themselves. Still if other evidence is sufficient to support the pleas of nolo contendere, the stop, arrest and search issue fades into unreachable oblivion. *Haney v. State*, 588 S.W.2d 913 (Tex.Cr.App. 1979). Thus we do not determine validity of seizure of evidence unless that which remains unchallenged is insufficient to support a conviction. The review exercise is much like the search of the appellate record for a judicial "confession" or "admission" deemed adequate to show guilt notwithstanding an unauthorized oral stipulation, a flawed written stipulation or some similar defect in evidencing guilt. See the exhaustive treatment, pro and con, in *Dinnery v. State*, 592 S.W.2d 343 (Tex.Cr.App. 1980); though it found that certain testimony by an accused "tantamount to a statement that all the allegations of the indictment were true and correct and was a judicial confession that

he was a guilty participant in the offense charged," support for that finding was derived from such a number of variations of the same theme that the Court seems satisfied to resolve the problem on a case by case basis.[7]

Guided then by the results in germane decided cases more than principles they perceived and enunciated, we are constrained to find that in what occurred here the guilt of appellants was independently demonstrated sufficiently to satisfy the dictates of Article 1.15, V.A.C.C.P., as construed from time to time by the Court.

The charge is simply possession of hydromorphone unlawfully intentionally and knowingly on August 1, 1978 in Harris County in Sutton's case only with intent to deliver. The stipulated testimony of Officer Dugger and Lt. Smith did not establish possession of the alleged substance by any appellant for, as already mentioned, exploration of that matter was pretermitted during examination of both witnesses.[8] The stipulated opinion of the chemist that 480 tablets taken from the Cadillac is hydromorphone; his testimony is the only evidence that may be considered fruits of the stop, arrest and search.[9] Putting aside *all* stipulated testimony of Dugger, Smith and the chemist, we are left with the written stipulation of evidence executed by each appellant and his attorney and approved by the trial court, characterizing it "the same thing as a judicial confession." Again, basically each states that "the witnesses"—without naming or otherwise identifying them—would testify that on the day and in the place in question each appellant "did inten-

---

7. While the writer has fully subscribed to the *Stiggers–Ferguson* doctrine, see *Prochaska v. State*, 587 S.W.2d 726 (Tex.Cr.App. 1979), and must defer to the ample majority treatment of the problem in *Dinnery v. State*, supra, still "the law is far from settled as to *what* constitutes a judicial confession," *Dinnery*, id. at 357 n.11 (emphasis in Dissenting Opinion), a principled, workable definition not yet having been formulated.

8. Both officers did testify generally that "everything involved as evidence" was seized as a direct result of stopping the 1976 Cadillac, but neither ever undertook to identify any substance as hydromorphone or relate it to a particular accused.

9. Yet, it must be observed that while the parties and their counsel seem to assume the 480 tablets constitute the hydromorphone allegedly possessed by each accused, the record is far from definitely supporting that assumption.

tionally and knowingly possess ... Hydromorphone."[10]

 While the legal *effect* of plea of nolo contendere is the same as a plea of guilty, Article 27.02, subd. 6, V.A.C.C.P.; *Sowell v. State*, 503 S.W.2d 793, 795 (Tex.Cr.App. 1974); *Lucero v. State*, 502 S.W.2d 750, 752 (Tex.Cr.App. 1973), the defensive posture of the accused–"I will not contest the accusation"[11] –is slightly different from the stance of the guilty pleading accused–"I admit my guilt of the accusation."[12] Consistent with that nice distinction our appellants, apparently unwilling to confess their guilt, made it known to the trial court that they did not contest the testimony they stipulated under oath "the witnesses" the State could produce would give in open court. That procedure, when properly founded in compliance with Article 1.15, V.A.C.C.P., provides evidence supporting a resultant conviction; cf. *Valdez v. State*, 555 S.W.2d 463,[13] (Tex.Cr.App. 1977). Each appellant also personally confirmed to the trial court that each made the verified stipulation bearing his signature.[14]

 Thus, the procedure lacking in *Valdez*, supra, and similar cases, was followed here. The stipulated testimony of the witnesses embraced every essential element of the offense charged and manifests the guilt of each appellant. Since that evidence is not shown to be based on, derived from or in any way tainted by the asserted constitutionally impermissible stop, arrest and search, we must conclude it was independently obtained by the witnesses.

Therefore, fruits of the stop, arrest and search aside, the evidence before the trial court sufficiently sustained the finding of guilty and its judgment of conviction. Both grounds of error are overruled and the judgment is affirmed.

---

10. That the stipulation failed to have the witnesses testify that the accused possessed the substance "unlawfully," as alleged in the indictment, is of no moment for the burden of going forward with evidence of any exception or exemption that might make possession lawful is on the accused, *Threlkeld v. State*, 558 S.W.2d 472 (Tex.Cr.App. 1977). But it must be observed that here the stipulated testimony of Dugger came perilously close to establishing the prescription exception of Section 4.04(a) of the Controlled Substances Act, V.A.C.S., 4476 15. In his presence and view the bottles of substance in the white sacks were obtained from a pharmacy pursuant to a tendered prescription that Dugger speculated was false because in the name of a person other than the apparent customer, but that is a perfectly legal procedure, *Posey v. State*, 545 S.W.2d 162, 164 (Tex.Cr.App. 1977).

11. See Black's Law Dictionary, Revised Fourth Edition, 1198.

12. See *Hoskins v. State*, 425 S.W.2d 825, 827, 829–830 (Tex.Cr.App. 1968).

13. "The statute applies whether the stipulation relates to what a witness would testify or to the truth of the allegation in the indictment."

14. Appellants' contention that "the sufficiency of the evidence problem" is not cured by the stipulation "that the witnesses would so testify" each was in possession of hydromorphone is foreclosed by the rationale of such cases as *Wallace v. State*, 478 S.W.2d 499, 500 (Tex.Cr. App. 1972) and *Seymour v. State*, 486 S.W.2d 341 (Tex.Cr.App. 1972), albeit decided before the 1971 amendment to Article 1.15, supra.