**Roger Dale EARLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61708.**

Court of Criminal Appeals of Texas, Panel No. 1.

July 7, 1982.

William G. Rosch, III, Houston, court appointed on appeal only, for appellant.

Carol S. Vance, Dist. Atty., Raymond E. Fuchs, Connie Williams, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction for the offense of burglary of a habitation; the punishment was assessed by the court at 13 years imprisonment in the Texas Department of Corrections.

Appellant asserts in his sole ground of error that evidence, admitted over his counsel's timely objection, was obtained by an unlawful arrest, search, and seizure made in violation of his constitutional rights. We agree; the judgment must be reversed.

On February 18, 1977, the residence of Jerry Gulsby was burglarized. The Gulsby family was away, and only upon their return about 10:30 p. m. did they learn about it.[1] At approximately 8:30 p. m., that same evening, Gulsby's neighbor, S. D. Gardner, heard the Gulsby's burglar alarm sound and the Gulsby's dogs start barking. Gardner ran next door and observed that a window in the rear of the house had been broken. Gardner testified that it was his opinion, from having talked with another neighbor there at the scene, that whomever the dogs were barking at was probably exiting by way of a drainage ditch that runs behind the houses.[2] Gardner decided to get in his car and drive around their neighborhood to see if he could locate any suspicious persons.

Some ten or fifteen minutes later, at a point approximately one half mile from the burglarized residence, Gardner spotted two men walking along the side of the street.

1. Gulsby indicated that there were several rings missing, and some other property that was not readily determined until he had a chance to take inventory.

2. Gardner testified that the portion of the drainage ditch which ran behind his house had water standing in it almost year round. Consequently, there were several other portions of the ditch that stayed muddy.

Gardner stopped them and immediately noticed that the lower portions of both men's trousers were wet and muddy. Also their shoes were wet and caked with mud. Gardner asked the men if they lived in the neighborhood. They responded that they did not. They added that their car had broken down and when a friend came and got the car started, he drove off leaving them behind. They told Gardner they were walking to the service station to use the telephone. Gardner told them that he would follow them to the service station in his car.[3] As the men walked to the service station, Gardner drove behind them with his car's headlights shining on the men's backs. Upon entering the Exxon station parking lot, Gardner noticed that one man had a pistol.[4] While the men went inside to use the phone, Gardner once again contacted the police on his citizen's band radio.[5] This time he talked to the deputy who subsequently arrested the two men.[6]

When Officer Martin, a deputy with the Harris County Sheriff's Office, arrived at the Exxon station the employees were all outside the station.[7] Martin came "in contact with" appellant inside the station while the other suspect was in the men's restroom. Deputy Martin placed appellant under restraint and took him into custody by removing him from the interior of the station, taking appellant to his patrol unit and handcuffing him.[8] Martin then went into the restroom and brought out appellant's companion, and handcuffed him. Though he did not establish the sequence both appellant and his companion were searched by Martin, and the restroom was also searched.

Gardner was standing nearby and observed all searches. On direct examination Martin had testified:

"Q: Did you conduct a search of the rest room?

A: Yes sir.

Q: What did you find in the rest room?

A: I found a .38 caliber pistol and a small jewelry box ... with some silver items in it."

Gardner testified that he watched as Martin conducted a search of both suspects and seized various items from their persons. On crossexamination he confirmed he was close enough and under lighting "good enough to where you could observe all these activities," and added:

"Yes sir, because *they were finding pistols* in the rest room and silver and things.

Q: Who was doing that?

A: *The folks working at the service station.*

Q: The deputy sheriff didn't find that?

A: Well, he was conducting the search where these other things were being found."

With Deputy Martin was "another fellow," but Martin did not know his capacity.

Of the fruits of all searches only tangible items taken from the person of appellant were introduced and, over objection, admitted into evidence.

The State does not argue that the search of appellant was incident to a legal arrest. Rather, they argue that Officer Martin

---

3. As soon as Gardner got in his car he "contacted an officer through my C.B. radio," but he did not elaborate on the content of the contact.

4. A handle of a pistol was seen protruding from a pocket of appellant's companion. There was a "bulge" on the pants of appellant, believed to be made by a pistol.

5. Again, Gardner did not relate what message he delivered.

6. The deputy told of receiving a call on the C.B. radio that a burglar alarm "was going on at a particular house," and while at that house he received another C.B. radio report that "the

actors who came from this house were headed ... northbound toward the Exxon station."

7. A sustained objection precluded Martin's relating what employees said. Neither did Martin claim to have spoken personally to Gardner, who was also at the station; nor did Gardner say that he ever reported to Martin what he had observed there before Martin arrived.

8. According to Article 15.22, V.A.C.C.P., a person is arrested "when he has actually been placed under restraint and taken into custody by an officer ..."

made an investigative stop of appellant based on his own experience and knowledge as well as specific facts related to him by Gardner in the citizen's band broadcast.

Certainly, the protection of the Fourth Amendment to the Constitution of the United States and Article I, Section 9 of the Constitution of this State against unreasonable searches does not prevent a law enforcement officer in appropriate circumstances from stopping and detaining a person to investigate suspected criminal activities though there is not probable cause to make an arrest. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Ablon v. State*, 537 S.W.2d 267 (Tex.Cr.App.1976); *Hernandez v. State*, 523 S.W.2d 410 (Tex.Cr.App. 1975).

However, the trilogy of *Terry v. Ohio*, supra, and *Sibron v. New York and Peters v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), along with their progeny that followed, insisted that "[b]efore an officer places his hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so . . . [and] . . . [i]n the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. *Terry v. Ohio, supra.*" *Sibron, id.*, 392 U.S. at 64, 88 S.Ct. at 1903. Deputy Martin did not have, indeed did not even attempt to point to, any such particular facts. Moreover, the facts here make clear that Martin arrested appellant when he restrained him inside the service station and placed him in custody, handcuffed, at the deputy's patrol unit. *Brewster v. State*, 606 S.W.2d 325 (Tex.Cr.App.1980): "Thus, an arrest is complete when one's liberty of movement is restricted or restrained . . . ," *id.*, at 327, n. 6. So, "it is clear that the arrest had, for purposes of constitutional justification, already taken place before the

search commenced," *id.*, 392 U.S. at 67, 88 S.Ct. at 1905. The question is whether the warrantless arrest of appellant was authorized by law.

■ Though a warrant is preferred, when the legislative judgment has long been to authorize it the Fourth Amendment is not violated by a warrantless arrest on probable cause without exigent circumstances. *United States v. Watson*, 423 U.S. 411, 423, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598 (1976). The judgment of our own Legislature, however, has long been to control by statute the authority of a peace officer to make a warrantless arrest, and exceptions to the general requirement that a warrant be obtained are few.[9] *Fry and Martinez* (Tex.Cr.App., Nos. 61,122 and 61,123, delivered June 9, 1982). And the situation where an officer is responding to a report of possible criminal activity by a citizen is governed by Article 14.04, V.A. C.C.P., *viz*:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

■ The legislative prescription of what must be "shown by staisfactory proof" is the legal equivalent of constitutional probable cause. *Fry and Martinez v. State*, supra; *Honeycutt v. State*, 499 S.W.2d 662, 664–665 (Tex.Cr.App.1973); *Lowery v. State*, supra, and the classic definition remains valid:

"[W]here, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has reasonable trustworthy information would warrant a prudent man in believing that a particular person has committed or is committing a crime. *Beck v. Ohio* [379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)]; *Henry v. United States*, 361

---

**9.** See seriatim treatment of each Chapter Fourteen exception by the Court in *Lowery v. State*,

499 S.W.2d 160, 164–165 (Tex.Cr.App.1973).

U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Weaver v. State*, 119 Tex.Cr.R. 334, 44 S.W.2d 731."

*Brown v. State*, 481 S.W.2d 106, 110 (Tex. Cr.App.1972).

Here Deputy Martin approached and arrested appellant as he stood inside the service station. Martin had driven to the station in response to a report presumably made by Gardner over a C.B. radio, but the record does not reveal that Martin knew any other fact of the matter.

 Though an officer may certainly consider information furnished by a private citizen "whose only contact with the police or criminal activity is a result of having witnessed a single criminal act committed by another," *Frazier v. State*, 480 S.W.2d 375, 379 (Tex.Cr.App.1972), he should have some indicia that the citizen is worthy of belief, *Honeycutt v. State*, supra, at 665, n. 3, and his information reliable before acting on his report. There is simply no indication that after he arrived at the station Martin learned anything more from Gardner. Indeed, the record only suggests that Martin accosted appellant and his companion on some undisclosed indication from employees of the service station. In short, when he arrested appellant it had not been "shown by satisfactory proof ... upon that representation of a credible person, that a felony had been committed," as Article 14.04, supra, requires.

Furthermore, "[a] showing that the offender is about to escape is indispensable under Article 14.04, supra," *Hardison v. State*, 597 S.W.2d 355 (Tex.Cr.App.1980); *King v. State*, 631 S.W.2d 486 (Tex.Cr.App. 1982); *Fry and Martinez v. State*, supra; *Honeycutt v. State*, supra. Here, appellant was afoot, standing in a service station and giving no indication whatsoever to Deputy Martin that he was "about to escape." "The warrantless arrest of the appellant was therefore unauthorized," *Hardison v. State*, supra. The single ground of error must be sustained.

The judgment of conviction is reversed, and the cause is remanded to the trial court.