**Mack Bernard YATES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–83–0185–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 30, 1984.

Aaron Bullock, Houston, for appellant.

Rory C. Flynn, Houston, for appellee.

Before JACK SMITH, BASS and CO-HEN, JJ.

## OPINION

JACK SMITH, Justice.

A jury found the appellant guilty of aggravated robbery, and the trial court assessed his punishment at seventy-five years confinement. The appellant, and his co-defendant, Michael Wayne Jones were tried together. This is a companion case to *Jones v. State*, 677 S.W.2d 211 (Tex.App. —Houston [1st Dist.], 1984). In two grounds of error, the appellant contends that the trial court erred in refusing to grant his motion to suppress his illegal arrest and the fruits thereof, and in not suppressing the in-court identification by the complainant.

By his first ground of error, appellant contends that the arresting officer had not received information from a reliable person and that his arrest was without probable cause.

The complainant testified that on October 26, 1982, she was in the driveway of her home and was about to put some laundry in her car, when she was approached by two black men. She stated that one was tall with a beard, and the other one was short, had a mustache, and a scar on his nose. She said the short man wore a green jacket and khaki pants. When the two men inquired about doing her yard work, and she answered no, the complainant and her son were forced into the house. The men threatened the complainant with a gun, and then proceeded to take items of money and jewelry, including a wedding ring with an inscription "All my love, Sandy." She testified that after about ten minutes, the door bell rang and the two men fled. When the complainant answered the door bell, a neighbor, Mr. Cooper was at the door. The complainant told Mr. Cooper what had happened and warned him that the two men had a gun.

Cooper testified that early in the morning, prior to the incident at the complainant's home, he had heard a burglar alarm at another neighbor's house. He observed a black man walking down the driveway from that neighbor's home. He also saw another black man, driving a black Thunderbird, pick up the first man he had observed.

About ten minutes later while he was engaged in conversation with another set of neighbors, he again saw the two black men. They were on foot and talking to the complainant in her front yard. At this time, a garbage truck pulled up in front of his home and Mr. Cooper went to the back of his home to bring out the garbage. When he returned, he could observe no one in the complainant's yard. This aroused his suspicions and he went to the complainant's house to ring the door bell. He rang it several times, but got no response. He then began to knock on the door. At that time, he observed the two black men he had seen earlier run down the complainant's driveway and head toward the freeway. When the complainant opened her door, she told Cooper what had occurred and warned him that the men had a gun. Cooper followed the men until they reached the other side of the freeway. He noticed that the black Thunderbird, in which they had been riding earlier, was parked on a feeder road to the freeway. He then returned to the complainant's home and spoke with the complainant. He attempted to phone the police but the phone had been torn out. He then ran to his own home and called the police.

Cooper also testified that when he noticed the black Thunderbird on the feeder road, he had glanced into the back seat and observed a two-year old baby inside the car. He stated that when the complainant's husband had arrived, he told him of his observation and the two men went to where the car was parked. The baby was no longer in the car.

Shortly thereafter, the police arrived and the two men told them what had occurred.

The officers testified that they had received a radio dispatch about a robbery. The dispatcher had told them that the suspects had left a child or children in a black car near the scene. As they were en route to the scene, they observed a black man, with two small children in his arms, at-

tempting to cross the freeway. When they reached the scene, and were informed of the robbery and that one of the men had crossed the freeway with a child, they immediately drove through the area where they had observed a man crossing the freeway with two children.

Upon arriving at the area where the man with the two children had been seen, they observed that man getting into a car which had stopped to give him a ride. This man, the appellant, was apprehended and searched. Some of the appellant's stolen jewelry, including the ring with the inscription "All my love, Sandy", and money were found in the pocket of the appellant. Further, the pistol which was used in the robbery was found inside a sweater left by the appellant on the car floor.

The police then took the appellant back to the complainant's residence. The complainant attempted to identify the appellant while he was seated in the back seat of the police car but could not make a positive identification. When the police removed the appellant from their vehicle, the complainant observed the scar on the appellant's nose and made a positive identification. After the identification was made, the complainant was informed of the recovery of her property.

The fourth amendment to the Constitution of the United States, and Art. 1, Sec. 9 of the Constitution of the State of Texas prohibit unreasonable searches or seizures by government officials. Tex. Code Crim.Pro.Ann. art. 14.04 (Vernon 1977) enumerates the circumstances where an arrest without a warrant is permitted. It states as follows:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Although a warrant is preferred, the fourth amendment is not violated by a warrantless arrest under exigent circumstances. *U.S. v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). In *Watson*, the Court stated that "the necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." *Watson*, 423 U.S. at 417, 96 S.Ct. at 824. In Texas, the legislative prescription of what must be "shown by satisfactory proof" is the legal equivalent of constitutional probable cause. *Earley v. State*, 635 S.W.2d 528 (Tex.Crim.App. 1982). Whether an arrest is constitutionally valid depends upon whether, at the moment the arrest is made, the officers had probable cause to make it; whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Earley*, 635 S.W.2d at 531; *Brown v. State*, 481 S.W.2d 106 (Tex.Crim. App.1972).

An officer may consider the information furnished by a private citizen whose only contact with the police or criminal activity is a result of having witnessed a single criminal act committed by another. The officer should have some indicia that the citizen is worthy of belief, and that his information is reliable. A showing that the offender is about to escape is indispensable under Art. 14.04, Tex.Code of Crim.Proc. Ann. *Earley*, 635 S.W.2d at 532.

In the present case, the appellant contends that the police who arrested him could not rely upon the information which they had received. In this connection, the record reflects that the arresting officer had received a dispatch about a robbery at the complainant's home. The dispatcher had also stated that the robbery suspect had left a child or children in a black car near the freeway. On the way to the scene of the robbery, the arresting officer observed a black man with two children attempting to cross the freeway. Upon arri-

ving at the scene of the robbery, Cooper and the complainant's husband informed the police of the robbery and that a child had been observed in the black car. Cooper described the suspect to the officer and told him that he witnessed the flight from the complainant's home to the freeway. Under these facts, we can perceive no reason why the arresting officer would not have believed that the representations made to him by Cooper were not true and that Cooper was not a credible person.

■ The appellant contends also that the arresting officer had no probable cause to arrest him. The arresting officer testified that he noticed the appellant, with two children, getting into the stopped car. The appellant matched the description given to the officer, had been seen crossing the freeway with the two children by the officer, and was about to flee. It was not until this time that the arresting officer apprehended the appellant and searched him. Although the witnesses' testimony was conflicting about whether the appellant had one child or two children with him, we are of the opinion that this fact alone is not determinative of whether the arresting officer had probable cause. The officers knew a robbery had occurred, they had been told that a child or children were involved, Cooper had informed the officers of the robbers' flight path, and in addition, gave them a description of the robbers. This information along with the fact that they had seen the appellant with two children attempting to cross the freeway, while on their way to the scene of the robbery, was sufficient probable cause to arrest the appellant. The appellant's first ground of error is overruled.

By his second ground of error, the appellant contends that the trial court erred in denying his motion to suppress the in-court identification of the appellant because it was "tainted" by an improper on-the-scene confrontation which was inherently suggestive. He argues that the complainant was highly nervous and excited, that she could not be sure that the appellant was the man who robbed her, and that she identified the appellant only after she saw her jewelry.

■ One-on-one confrontations that are unnecessarily suggestive have been condemned. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). However, the admission of evidence of a one-man show up without more does not violate due process. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Identification testimony must possess sufficient aspects of reliability. To ensure reliability, the Texas Court of Criminal Appeals in *Garza v. State*, 633 S.W.2d 508 (Tex.Crim.App.1982) (op. on reh'g), said the following factors should be considered:

1) the opportunity to view
2) the degree of attention
3) the accuracy of the description
4) the witness' level of certainty
5) the time between the crime and the confrontation.

*Garza*, 633 S.W.2d at 513.

Although the appellant contends that the complainant did not identify him until after she had seen her jewelry which had been taken from her, the record does not corroborate this argument. The record reflects that when the police brought the appellant back to the home of the complainant and asked her to come out to the police car to look at the man in the car, the complainant could not positively identify the appellant because she could not see clearly into the back seat of the police vehicle. When the appellant was taken out of the police vehicle, she recognized him, saw the scar she had noticed during the robbery, and made a positive identification. It was not until after she had made this identification that she was shown her jewelry.

■ The complainant had a ten-minute opportunity to view the appellant during the robbery. Her description that he was short, had a scar, and a mustache was accurate. Her identification of the appellant shortly after the robbery was positive. All the factors set forth in *Garza, supra* were met. We hold that the trial court did not err in denying the appellant's motion to

suppress the complainant's identification. The appellant's second ground of error is overruled.

The judgment of the trial is affirmed.