**Willie Earl HADNOT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–95–099CR.**

Court of Appeals of Texas, Beaumont.

Submitted on Nov. 19, 1996.

Decided April 23, 1997.

---

William S. Morian, Jr., Seale, Stover, Coffield & Bisbey, Jasper, for appellant.

James A. Clark, Criminal District Attorney, Woodville, for State.

Before WALKER, C.J., and BURGESS and CAMPBELL *, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Aggravated Possession of a Controlled Substance (Cocaine) With Intent to Deliver, the offense date being on or about June 6, 1994. TEX.HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 1992).[1] Following the jury's verdict, the trial court found a single enhancement allegation to be true and assessed punishment at confinement in the Texas Department of Criminal Justice—Institutional Division for a term of twenty-five (years). The trial court assessed no fine.

■ Appellant's first three points of error complain of the failure of the trial court to suppress a statement appellant allegedly gave to the authorities while in custody for the instant offense. The bases for suppression, appellant contends, were that his arrest was illegal, that the statement was not made freely and voluntarily, and that the statement was obtained in violation of the Fourth Amendment, TEX. CONST. art. I, § 9, and TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1997). The record before us reflects that a pretrial suppression hearing was held before the Honorable Earl B. Stover. At the

---

\* The Honorable Charles F. (Chuck) Campbell, Jr., sitting by assignment pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

1. Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex.Gen.Laws 2230, 2935, *amended by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex.Gen.Laws 3586, 3705. Any further reference in the opinion to the Texas Penal Code or Texas Health and Safety Code will be to the code provisions in effect on the date the offense was committed.

conclusion of the evidence, Judge Stover denied appellant's motion. At trial, testimony was presented before the jury and the Honorable Monte D. Lawlis with regard to the events surrounding appellant's arrest and the subsequent statement allegedly made by appellant. At trial, appellant objected to the admissibility of the statement with Judge Lawlis overruling said objection. When reviewing a trial court's ruling on a motion to suppress, the appellate court usually looks only to the evidence adduced at the suppression hearing. This is because the trial judge does not have the benefit of any testimony adduced at trial when making his or her ruling. However, when the alleged trial error centers on the admission of evidence at trial and the issue was consensually litigated there, the evidence will be considered to have been reopened. *See Barley v. State,* 906 S.W.2d 27, 31 n. 2 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996); *Webb v. State,* 760 S.W.2d 263, 272 n. 13 (Tex.Crim.App.1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989). Therefore, in consideration of the issues presented in appellant's first three points of error we are not limited to the evidence admitted at the pretrial hearing.[2]

The record reflects that the key witness for the State was David Laine, a certified peace officer employed with the Southeast Texas Narcotics and Intelligence Task Force. At the time of trial, Officer Laine had worked in law enforcement for about eleven and one-half years, with about seven of those years in narcotics. It was his job to curb the flow of illicit narcotics into a four county area that included Tyler County. Through his experience as a narcotics investigator, he was familiar with the workings of narcotics traffickers.

On June 3, 1994, at approximately 5:05 p.m., Officer Laine received information from a reliable confidential informant regarding individuals who were to be transporting illegal narcotics into Tyler County. Officer Laine stated that the informant told him that an older model Pontiac Bonneville, four-door, driven by James Henderson, with appellant as front passenger and three young, black females in the back seat, was en route to Houston, Texas, where James Henderson and appellant would purchase a large quantity of crack cocaine. Officer Laine was able to corroborate some of the details that the informant provided, such as where the individuals had spent the night the previous evening. Throughout his testimony, Officer Laine provided, based upon his law enforcement experiences, descriptions of what can only be described as his version of a Tyler County drug-courier profile. One such example is contained in the following response to a question from the State:

A. We are finding quite frequently they're using young—most of the time juvenile—females to hide the contraband on when it is being transported from one point to another, knowing the officers that normally stop these vehicles cannot search a young female at that location of a traffic stop.

As the informant was able to provide the route the suspects were traveling, Officer Laine was able to park his vehicle just off the highway and wait for the described vehicle. At approximately 10:35 p.m., Officer Laine observed the vehicle being operated at a very slow rate of speed. He checked the vehicle on radar as traveling 38 m.p.h. in a posted 55 m.p.h. zone. Officer Laine then commented that: "On occasions in the past I have seen drug couriers in my experience travel below the speed limit. This one was traveling quite a bit below the speed limit, and that's in

**2.** The evidence concerning appellant's arrest and the taking of the written statement was developed initially at the pretrial suppression hearing. The evidence at said hearing might have been developed differently had the parties followed the guidelines as to which party had the burden of production and which had the burden of persuasion. *See Russell v. State,* 717 S.W.2d 7, 9–10 (Tex.Crim.App.1986). Generally, once the defendant shows that the arrest was warrantless, the

burden of proof shifts to the State to demonstrate a warrant, or to demonstrate the validity of the warrantless arrest. In the instant case, appellant assumed the burden of production and burden of proof. All witnesses allegedly present when appellant was arrested, as well as when he made his statement, were called and examined by appellant. The State, without objection, was content to cross-examine the witnesses despite the burden of persuasion cast upon it by law.

deterrent (sic) to being stopped by law enforcement officers." Officer Laine then began to follow the vehicle and shortly observed the vehicle failing to drive in a single, marked lane. As this is a violation of the law, Officer Laine activated his emergency lights in an attempt to stop the vehicle, which had been traveling in the far right lane of the four-lane highway. Officer Laine then observed the vehicle veer left, cross four lanes, and eventually come to rest on the shoulder on the opposite side of the highway.

The driver, James Henderson, initially identified himself as "William Pickett" by giving Officer Laine a false driver's license. Appellant properly identified himself to Officer Laine. At some point in time, two other officers arrived on the scene. They were Officer Bryan Weatherford of the Woodville Police Department, and Officer Ralph Fuller, also of the Woodville Police Department. Following the stop and identification of the occupants of the vehicle, Officer Laine interviewed each of the individuals. With regard to appellant, Laine testified that he patted appellant down for weapons and found none. Apparently a more thorough search of both Henderson and appellant was conducted at the scene. No contraband was found on either man. A warrant check was run on appellant but no arrest warrants were outstanding on him. The following pertinent testimony was elicited from Officer Laine by appellant's trial counsel with regard to appellant's subsequent arrest at the scene of the traffic stop:

Q. [Trial Counsel] Up to this point in time had you observed yourself Mr. Hadnot break any law?

A. Yes, ma'am.

Q. You had observed him break a law. What was it?

A. I believed I had probable cause that he was in possession with (sic) controlled substance.

Q. Did you observe him with your eyes break any law to this time?

A. No, ma'am.

Q. Did you search the car?

A. Yes, I did.

Q. Did you find any contraband in the car?

A. No, ma'am.

Q. You arrested Mr. Hadnot at this time?

A. Yes, ma'am.

Q. What was your probable cause to arrest Mr. Hadnot?

A. Based on the information I had received from the confidential informant, Mr. Hadnot along with other individuals were conspiring together to possess a large quantity of suspected crack cocaine. Based upon the fact I had received information numerous times from the confidential informant which proved to be true and reliable each and every time, I based it on that as well as the vehicle coming back with a described driver and the passenger and the four (sic) girls in the back in this vehicle coming back on U.S. 190 and a method that was known to me. The totality of the circumstances in this case—I based my arrest on that.

* * * * * * * * * * *

Q. Did you feel like when you saw them on the highway if you did not arrest them, then they would escape?

A. Yes. They had a very good chance of abandoning the evidence.

Q. So by escape you're not talking about they would leave the scene—you're talking about they would abandon the evidence?

A. Sure—you could flush down the commode once inside a room of a hotel very easily.

Q. Did you try to get a warrant for Mr. Hadnot's arrest?

A. No, ma'am.

Q. Did you even approach a magistrate for an arrest warrant?

A. Prior to the traffic stop?

Q. Yes.

A. No, ma'am.

Q. Why didn't you do that?

A. Based on the confidential informant's information I believed the informant's information once again to be true and reliable. When I seen (sic) the vehicle returning to Woodville, Texas, just as he

described, that was part of the totality of the circumstances.

The vehicle being on the highway are exigent circumstances, and the vehicle was mobile. So, therefore, if I were to take time to get a search warrant or take time to get an arrest warrant, they could walk away, drop it in the woods, and it would be very hard to find. So, therefore, I made a warrantless arrest.

Q. But you had no probable cause to arrest until you are saying you saw the vehicle?

A. I felt like that was part of the totality of the circumstances in this case, yes.

Q. When Mr. Hadnot was taken to jail, he was strip searched at the jail; is that correct?

A. Yes, ma'am.

Q. Was anything found on him?

A. No, ma'am.

The record reflects that although no contraband was located in the vehicle or on the persons of Henderson or appellant, all five individuals were arrested and brought to the Tyler County Justice Center. It was there that a female police officer "stripped searched" the female passengers. Two of the females were carrying what was later identified as crack cocaine concealed in their hair. The record further reflects that Officer Laine attempted to question appellant at about 3:15 a.m. on June 4, 1994. It was at that point that Laine first read appellant his *Miranda*[3] warnings. Laine stated that appellant acknowledged that he understood his rights but preferred not to talk to the officer. At that point, Laine told appellant that Henderson and the females "had cooperated." Laine testified that he made no promises to appellant in exchange for a statement. Laine also stated that appellant made no request for an attorney either at the initial interview on June 4, or on June 6 when appellant provided his written statement. Laine testified that he had no contact with appellant from June 4 until June 6 at around 4:45 or 5:00 p.m. On redirect examination by the State at trial, Officer Laine provided the following testimony:

Q. [State] Now between the time of his arrest and the time of this confession, how much time had elapsed?

A. [Laine] Two days.

Q. Anything intervened in that time that extenuated (sic) from his arrest? In other words, sufficient time in there between the time of his arrest and the time of making the statement was there some two days?

A. Yes, sir.

Q. And but there wasn't any intervening circumstances or occurrences in that period of time?

A. No, sir.

Q. He was just in jail?

A. I would not have gone back to talk to Mr. Hadnot had he not sent for someone.

Based upon the above-described facts, Judge Lawlis made the following written conclusions of law:

1. Based upon the information given to Officer Laine by a reliable, credible, confidential informant; Officer Laine's experience as a narcotics investigator and his knowledge of narcotics trafficking and the methods and habits of narcotics traffickers; the corroboration of the information given to Laine; the suspicious nature of the operation of and traffic violations by the vehicle driver; the lack of female officers to search the female occupants of the suspect vehicle; and the exigencies occasioned by the mobile nature of the automobile and the invalid driver's license presented by Henderson, it is concluded that Officer Laine had probable cause to stop the vehicle, detain the occupants, make a warrantless arrest of the occupants and transport them to jail and strip search the females.

2. Defendant's confession was freely and voluntarily given after being properly and adequately warned of his rights when arrested with probable cause and his confession was not the result of the exploitation of a warrantless arrest.

■ At a suppression hearing, the trial court is the sole judge of the credibility of witnesses and the weight of their testimony.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Banda v. State,* 890 S.W.2d 42, 51 (Tex.Crim. App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). The reviewing court does not engage in its own factual review, and so long as the record supports the trial court's findings, the reviewing court is not at liberty to disturb them. *Id.* at 51–52. On appellate review, the Court considers only the question of whether the trial court improperly applied the law to the facts. *Id.* at 52. The Court of Criminal Appeals has clarified the issue of appellate review of a trial court's probable cause determination in *DuBose v. State,* 915 S.W.2d 493, 497–498 (Tex.Crim.App.1996), with the following language:

> When the courts of appeals analyze a trial court's denial of a motion to suppress evidence they must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts—at least so long as it appears the trial court has applied the correct standard of law to those historical facts. They should reverse the trial court's decision only for an abuse of discretion; that is to say, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion.

■■■ Points of error one and three complain that appellant's arrest was illegal and his subsequent statement was "fruit of the poisonous tree." Initially, we note that appellant has failed to provide any substantive analysis and argument in separate grounds with regard to his complaints pursuant to the Texas Constitution. Briefs asserting rights under the Texas Constitution are inadequate if they fail to provide separate argument and authority in support of the assertion. *Heitman v. State,* 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991). We, therefore, narrow our scrutiny to the Fourth Amendment and any properly briefed Texas statutory provisions.

■■■ In the context of an arrest, an officer acting with probable cause to arrest may do so without a warrant and not violate the Fourth Amendment. *United States v. Watson,* 423 U.S. 411, 415–417, 96 S.Ct. 820, 823–825, 46 L.Ed.2d 598, 604–605 (1976). The correct legal standard for determining probable cause for a warrantless arrest is whether, at the moment of arrest, the knowledge of the arresting officer that is based upon reasonably trustworthy information would warrant a reasonable and prudent person in believing that a particular person has committed or is committing a crime. *See Amores v. State,* 816 S.W.2d 407, 413–415 (Tex.Crim.App.1991); *Vasquez v. State,* 739 S.W.2d 37, 44 (Tex.Crim.App.1987). In the instant case, the initial stop of the suspect vehicle was entirely proper as Officer Laine had observed a violation of the traffic laws. *Garcia v. State,* 827 S.W.2d 937, 944 (Tex. Crim.App.1992). We also have no problem with Officer Laine's questioning of appellant and the other individuals riding in the vehicle as it has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *United States v. Brignoni–Ponce,* 422 U.S. 873, 880, 95 S.Ct. 2574, 2579–2580, 45 L.Ed.2d 607 (1975); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App. 1991). An occupant of an automobile is just as subject to a brief detention as is a pedestrian. *See Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Gearing v. State,* 685 S.W.2d 326, 328 (Tex.Crim. App.1985). Under *Terry* and its progeny, warrantless detentions by police on less than probable cause are limited to brief questioning of suspicious persons with respect to identity, reason for being in the area, or other such reasonable inquiries of a truly investigative nature.

■■■ The testimony of Officer Laine reflects that at some point during the detention of the five individuals, consent to search the vehicle and the persons of the two males was received and the searches were conducted. A consent to search is one of the established exceptions to the requirements of both

a warrant and probable cause. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Under this concept, the protections afforded by the Fourth Amendment may be waived by an individual when he consents to a search of his person or property. *Reyes v. State,* 741 S.W.2d 414, 430 (Tex.Crim.App.1987). In the instant case, the testimony clearly established that at the conclusion of the search of the vehicle and of appellant's person, no contraband was discovered. It is at this particular point that "probable cause" for the *appellant's arrest* is examined for it is only at this point, following the search of appellant and the vehicle, that *all* of the "facts and circumstances within [Officer Laine's] knowledge and of which he ha[d] reasonably trustworthy information" were in existence so as to determine whether Officer Laine could *still* have had a "reasonable belief" that a "particular person," i.e., the appellant, had committed or was committing the crime of possession of a controlled substance. The fact that the female passengers had not yet been searched provided no legal justification for the arrest of appellant. As we appreciate the facts, appellant would have no standing to complain of the contraband seized from the persons of the females as he would have no reasonable expectation of privacy in the contents of the females' hair.[4] *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

 As a result of the facts and circumstances described above, the State prosecuted appellant as a party to the offense of possession of contraband with intent to deliver, and ultimately obtained a conviction. *See* TEX.PENAL CODE ANN. §§ 7.01 & 7.02 (Vernon 1994). However, we have found no authority for the proposition that a warrantless arrest may be made at the conclusion of a consensual search of an individual's person and his immediate surroundings, after said search turned up absolutely no contraband, on the theory that the individual was part of

a "conspiracy to possess" "suspected" contraband. At the time of appellant's *arrest,* Officer Laine had been given the opportunity to confirm his reasonable suspicions based upon the informant's tip *as to appellant.* For purposes of a warrantless arrest, any suspicion of appellant's personal involvement in actual care, custody, control or management of any contraband proved unreasonable at the conclusion of the roadside searches. Under the facts presented, an unreasonable seizure of appellant's person, in violation of his Fourth Amendment protections, occurred at the time of his arrest.

 Appellant also contends that his arrest was in violation of TEX.CODE CRIM.PROC. ANN. art. 14.04 (Vernon 1977). It has been held that Texas statutory provisions governing grounds for warrantless arrest require the legal equivalent of constitutional probable cause. *Amores,* 816 S.W.2d at 413; *Earley v. State,* 635 S.W.2d 528, 531 (Tex.Crim.App. 1982). As such, a finding of a Fourth Amendment violation with regard to a lack of probable cause for a warrantless arrest is also a finding of a violation of art. 14.04, and any evidence recovered therefrom is excludable under art. 38.23.[5] Therefore, under the applicable appellate standard recited in *Du-Bose, supra,* we find that no reasonable view of the facts in evidence, even in the light most favorable to the trial court's ruling, can support the finding that probable cause for the *arrest* of appellant existed *at the time the arrest was effectuated.*

 The finding of an illegal arrest of appellant, however, does not end our inquiry, because the general rule is that evidence is not necessarily inadmissible simply because it is obtained after an illegal arrest. *See Bell v. State,* 724 S.W.2d 780, 787 (Tex.Crim.App. 1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). At this point, the "attenuation" doctrine comes into play. This doctrine suggests that, if the evidence in question is so attenuated from the illegal

---

4. We include this observation in passing because on p. 19 of appellant's brief he seems to argue for the suppression of the contraband found on the females as well as for the suppression of his statement.

5. Article 38.23(a) reads, in pertinent part: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution of laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

conduct that it cannot be said to be a product of the illegality, its admission into evidence does not violate the Fourth Amendment or TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1997). *Johnson v. State*, 871 S.W.2d 744, 749–751 (Tex.Crim.App.1994). Texas courts apply the following four-factor attenuation test found in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975):

> (1) whether *Miranda* warnings were given,
>
> (2) the temporal proximity of the arrest and the confession,
>
> (3) the presence of intervening circumstances, and
>
> (4) the purpose and flagrancy of the official misconduct.

*Dowthitt v. State*, 931 S.W.2d 244, 261 (Tex. Crim.App.1996).

In the instant case, the testimony indicates that appellant had been informed of his *Miranda* rights at the 3:15 a.m. interview with Officer Laine on the night of his arrest. Appellant was again Mirandized just prior to providing the statement. The record further indicates that approximately two days elapsed between the time of the illegal arrest and the taking of appellant's statement by Officer Laine. The record does not clearly indicate whether or not appellant was taken before a magistrate as provided for under TEX.CODE CRIM.PROC.ANN. art. 15.17(a) (Vernon Supp.1997). Officer Laine testified at trial that there were no intervening circumstances between the time of appellant's arrest and the time the statement was given.

6. *See Watson v. State*, 762 S.W.2d 591, 594, n. 4 (Tex.Crim.App.1988).

7. Under the "purpose and flagrancy" prong of *Brown*, the pretextual nature of the initial stop of the vehicle may be factored. We fully realize that the Court in *Garcia v. State, supra*, held that the "pretext arrest" doctrine was no longer viable for Fourth Amendment purposes. However, the Court concluded by stating:

> Thus, the appropriate limitation of an officer's discretion, under the Fourth Amendment, is the existence of a law and the actual commission of the offense; an officer's subjective intent is relevant only to a credibility determination of his stated reasons for stopping or arresting an individual.

The State's brief implies that appellant was magistratized [6] *after* having given his statement to Laine. With regard to the purpose and flagrancy of the illegal arrest, it appears that its main purpose was investigatory in that up to that point no contraband had been discovered during the searches of appellant, Henderson, and the vehicle.[7] In *Brown*, such a purpose was explicitly condemned. *Brown*, 422 U.S. at 605, 95 S.Ct. at 2262–2263, 45 L.Ed.2d at 428. The giving of the *Miranda* warnings and, arguably, the two day time lapse, militate in the State's favor as tending to purge the initial taint. However, the lack of any intervening circumstances and the apparently investigatory purpose for *appellant's* arrest favor a finding that the taint of the arrest had not been sufficiently attenuated by the time the statement was taken. It has been held that time is the least important factor, *see Bell*, 724 S.W.2d at 788, and that purpose and flagrancy of official misconduct weigh heaviest, *Self v. State*, 709 S.W.2d 662, 668 (Tex.Crim.App.1986), in evaluating the attenuation of taint.

Under the analysis of the *Brown* factors set out above, we find that the taint of appellant's illegal arrest was not sufficiently attenuated so as to permit the written statement, State's Exhibit 6, to be admissible at trial. Points of error one and three are sustained.

■ Having found trial error, TEX. R.APP.P. 81(b)(2) requires that we reverse the judgment unless we determine beyond a reasonable doubt that the error made no contribution to the conviction. *See Jones v. State*, 833 S.W.2d 118, 126 (Tex.Crim.App.

In the instant case, recall that Officer Laine testified that until he observed the vehicle and its passengers traveling on the highway he did not feel he had enough probable cause to request an arrest warrant from a magistrate. After said observation, however, Officer Laine felt that the reliable informant's tip was sufficiently corroborated so that under the "totality of the circumstances" probable cause for arrest instantly ripened. If this was indeed in Officer Laine's mind at the point he first observed the vehicle and its passengers, we wonder why it was thereafter necessary to follow the vehicle until the driver committed a traffic violation because probable cause for arrest would have permitted Officer Laine to stop the vehicle immediately and place all occupants under arrest without further investigation.

1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). Under the record before us, we find that reversal is in order. The record indicates that time and again the testimony from a variety of witnesses revolved around appellant's statement. There is no question but that the statement, State's Exhibit 6, is thoroughly incriminating with regard to appellant. Furthermore, there is virtually no other testimony or physical evidence tying appellant to the contraband. The Supreme Court in *Arizona v. Fulminante,* 499 U.S. 279, 312, 111 S.Ct. 1246, 1266, 113 L.Ed.2d 302, 333 (1991), recognized that "an involuntary confession may have a more dramatic effect on the course of a trial than do other trial errors—in particular cases it may be devastating to a defendant[.]" During both portions of its final argument to the jury, the State relied heavily on appellant's written statement. The State repeatedly discounted appellant's trial testimony by contrasting it with his written statement. The State also emphasized to the jury the "voluntary" nature of said statement. Clearly, we cannot say beyond a reasonable doubt that the error made no contribution to appellant's conviction. Reversal of the conviction is in order.

As none of appellant's remaining points of error complain of the lack of legally sufficient evidence to sustain his conviction, we will forgo their analysis. We reverse the trial court's judgment and remand the cause to the trial court so as to provide appellant an opportunity for a new trial.

REVERSED AND REMANDED.