Lee Sebastian McMILLIAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–91–00195–CR.

Court of Appeals of Texas, Tyler.

Aug. 17, 1993.

Rehearing Denied Oct. 19, 1993.

James Litzler, Sulphur Springs, for appellant.

Frank Long, Sulphur Springs, for appellee.

Before RAMEY, C.J., and BILL BASS and HOLCOMB, JJ.

HOLCOMB, Justice.

Appellant brings this appeal from his conviction of burglary of a habitation after a plea of "not guilty" before a jury which assessed punishment at 35 years imprisonment. We will affirm.

Appellant assigns two points of error. His first point claims there was no evidence, or alternatively, insufficient evidence, to support the jury's finding that Appellant committed the offense as alleged in the indictment. By his second point, Appellant contends that the trial court erred in denying his motion for mistrial based upon jury misconduct.

In considering an insufficient evidence challenge, we are required to follow *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in which the Supreme Court wrote:

> The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But, this inquiry does not require a court to ask itself whether it believes the evidence at trial establishes it beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318–19, 99 S.Ct. at 2788–89. This standard of review was adopted for Texas courts in *Butler v. State,* 769 S.W.2d 234 (Tex.Cr.App.1989).

Appellant points out there was no evidence that anyone saw him entering the habitation owned by the complainant, Clyde Butler. Appellant also contends the weakness in the State's case is the identification testimony by the eye-witnesses. He alleges that their testimony is insufficient to dispel reasonable doubt as to his involvement in the offense. None of the identifying witnesses saw Appellant entering, inside of, or exiting the habitation in question.

We will now review the evidence revealed in the record in the light most favorable to the jury's verdict.

On July 16, 1990, Clyde Butler, who is eighty-one (81) years old, left his home around 5:00 p.m. with his grandson to go to McDonald's. When he returned home around 7:00 p.m., he noticed the door had been broken into and several items were taken from his home and many items within the house had been damaged or moved to other locations. One particular item that was taken was a Colt single-action .32 caliber pistol, serial number 307821, which had belonged to his grandfather.

Mike Butler, Clyde Butler's son, Mike Butler's wife, Doris Butler, and his step-daughter Anna Taylor, were finishing supper between 6:30 and 7:00 p.m. They were certain of the time because *"Major Dad"* was on television. Doris Butler was in the process of cleaning the dishes so she could feed the dogs, when she noticed three black males in a dark blue Pontiac TransAm going approximately 5 m.p.h. on their road. This was uncommon because only five people lived on their road. Moments later, Anna went outside and then came back in and told her step-father that the strangers were at "Grandpa's." Mike Butler got in his pick-up truck and drove over to his father's house located on the same side of the road, approximately 150 yards from his house. He saw the TransAm turning in the yard. When he arrived, he talked to the driver of the TransAm, who was alone, and who stated that he was looking for someone and then hastily left. Mike returned to his house, and a few minutes later he noticed two black males coming through a field from behind his father's house. Mike got in his truck once again and drove toward the men. One of the men who he positively identified as the appellant, approached to within 20 to 25 feet of him. Mike asked him, "What's going on?", and Appellant replied that he had lost a pit bull dog which had jumped out of the car and he was looking for it. Appellant claimed he had paid $500.00 for the dog, and he would appreciate it if Mike would tie the dog up until they returned if Mike found him. Appellant then drove away with his companions in the TransAm that had returned. Mike Butler stated that he had believed Appellant's explanation until he walked over to his father's house and saw that a door had been broken into and the house had been burglarized.

Anna Taylor located a rifle scope, which was later shown to have been taken from Clyde Butler's house, in the field where Appellant and one of his companions had been walking in a direction away from Mike's father's house. They called the Sheriff.

Mike had written down the license plate number of the TransAm, which he turned over to Deputy Sheriff Rupe. He told Rupe the letters might be incorrect because he had written this information in such a hurry. (The license number he gave to Rupe was 337–WXZ.)

O.C. Rupe, investigator for the Hopkins County Sheriff's Department, testified that he was called to investigate the burglary of Clyde Butler's residence. Deputy Rupe testified that he had Mike Butler, Doris Butler, and Anna Taylor come to the Sheriff's Office the following morning. At the Sheriff's Office, July 17, 1990, they were shown an array of photographs in a box. Mike and Anna Taylor picked out one of the photos they said resembled one of the persons at the scene, however, they were not sure. This was shown to be a Michael Timmons.

Later that day, Rupe obtained a lead on the case from another police source in Greenville and prepared a photographic line-up. Both Mike Butler and Anna Taylor positively picked out the appellant from the photo line-up as the person whom they had talked to at the scene of the offense. At one point during the investigation, Mike Butler called Deputy Rupe and said he did not want to prosecute the case because of fear of retaliation. However, he later decided to go through with it.

At trial, Mike Butler and Anna Taylor made a positive in-court identification of Appellant. Mike Butler was shown to be hard-of-hearing which required him to look directly at whomever he talked with and read their lips in order to understand what they were saying. A police officer from Greenville, Texas, where Appellant resided, testified that Appellant had been stopped in Greenville while driving a vehicle that was a blue colored Pontiac TransAm with Texas license number 337–WSV.

A pawn shop owner from Dallas testified that on July 17, 1990, the day after the burglary, he had purchased the pistol matching the description and bearing the same serial number. The pawn shop owner further stated that the person had shown him a driver's license, and the picture did fit the person who sold him the gun, and that the person's name on the driver's license was Lee Sebastian McMillian, and that the driver's license had a Greenville address, though the seller of the gun told him that he lived in Dallas and gave him a Dallas address, except

for the Greenville zip code. The pawn shop owner also remembered that the person who sold him the gun, had stated that his father had left it to him.

Keith Davis testified for Appellant, and stated he and Appellant were at a night club called Jaybo's in Greenville when someone tried to sell him a .22 caliber revolver for $40.00. He offered $10.00 for it, but learned later that Appellant had purchased it for $20.00. He further related that he had never talked to the police official for over seven months about this information. Davis stated the gun had been offered to him in around 3:00 or 4:00 p.m. on the same day of the burglary. It was pointed out that this would have been an impossibility as the burglary had not yet taken place when this allegedly occurred.

■ Appellant argues that the reliability of the eye-witnesses is suspect because Mike Butler and Anna Taylor had at first identified a picture of Michael Timmons as looking like one of the individuals in the burglary, and the fact that Clyde Butler did not want to prosecute at first. However, this was all explained in the record and it was the jury's duty to evaluate the weight and credibility of the testimony.

In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court stated that the central question is whether, "under the totality of the circumstances, the identification is reliable." *Id.* The Court stated that "the factors to be considered in evaluating the likelihood of misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." *Id.* (numbers added). The Court went on to say that evidence does not necessarily have to be excluded, even if there is some suggestiveness, if the identification is reliable. *See also Jackson v. State,* 628 S.W.2d 446 (Tex. Cr.App.1982); *Yates v. State,* 677 S.W.2d 215 (Tex.App.—Houston [1st Dist.] 1984, no pet.).

Further, in *Clay v. State,* 518 S.W.2d 550 (Tex.Cr.App.1975), the Court of Criminal Appeals held that in-court testimony of an identifying witness is admissible, as long as the record clearly reflects that the witness' observation of the accused during the offense was sufficient to serve as an independent origin for the in-court identification. *See also Perkins v. State,* 628 S.W.2d 112 (Tex. App.—San Antonio 1981, no pet.). Here, both Mike Butler and Anna Taylor were able to view the appellant for a sufficient period of time under ideal conditions, and did positively identify Appellant from the photo line-up several days later. We hold that after a review of the sufficiency of the evidence and giving due regard to the circumstantial qualities of some of the evidence, and the identification testimony, we find that after reviewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Point of error one is overruled.

■ We now turn to whether or not the trial court committed an error in denying Appellant's motion for mistrial based upon jury conduct. It appears from the record that at a point in the trial just following the closing testimony, bailiff Tina Oates advised the court that she heard one of the jurors talking outside the jury room that morning. Ms. Oates stated that juror Belinda Martin had said, "Since I quit smoking yesterday morning this is not a good time for me to be on the jury. I don't care who it is, they're guilty. The S.O.B. is guilty." Ms. Oates added that she believed that Ms. Martin was joking, but that she wanted to report it to the court. The court then questioned Ms. Martin as to the statement. Ms. Martin said that she had made a statement similar to what Ms. Oates had reported, but that she was just joking, and her statement would have no effect on the way she ruled in the case. She explained her only verdict would be reached through her thought process as the witnesses were presented and that she would reach her decision based upon what each witness said. Ms. Clemmens was called to the witness stand as a juror who could possibly have heard the statement. Ms. Clemmens stated that she had heard it, and that she believed

the statement had been made in jest and was a bad joke. She stated that the statement would not affect her deliberations in any way and would not influence her at all. Ms. Callan was called next to the witness stand as a juror. Ms. Callan stated that she had not heard any statement about Appellant at all, but only had heard that Ms. Martin had quit smoking. She said that her deliberations would be unaffected by any statements that she had heard. She further stated that she would be influenced in no way by any statements made outside the courtroom. Ms. Hutchins was the next juror called and she stated that she had not heard any of the conversation. She further stated that nothing outside the courtroom would affect her in deliberating a verdict in the case whatsoever.

Jury misconduct questions are generally left to the discretion of the trial court if there is conflicting evidence. *Brown v. State,* 475 S.W.2d 938 (Tex.Cr.App.1971); *Garza v. State,* 368 S.W.2d 213 (Tex.Cr.App.1963). It appears the trial court brought in each of the jurors who may have been affected and questioned them as to the influence the statements might have had on their deliberations, and as to any influence the statements might have had on their verdict. Each of the jurors stated that their thought processes had not been affected by any statements, but that they would judge the defendant's guilt or innocence by the evidence in the courtroom. In the case of *Horst v. State,* 758 S.W.2d 311 (Tex.App.—Amarillo 1988, pet. ref'd), a juror was approached in the parking lot by an unidentified man who stated to the juror, "If you put any of those banditos in jail, I'll kill you, son of a bitch." The juror later told two other jurors what he had heard from the person in the parking lot. The jurors testified as to the impact that the statement had on their deliberations. The three jurors testified that their deliberations would not be affected in any way by the event, and that each did not have a bias or prejudice against the defendant or in favor of the State by virtue of that event. One of the jurors stated that he probably would not be able to put the event out of his mind, but that it would not obstruct his thinking or hinder his position to make a sound decision, because it did not bother him at the time.

The Court of Criminal Appeals, in affirming the verdict of a jury, stated that "the proper inquiry, where no actual conversation took place, is as to the effect of the incident upon the jury's ability to judge a case impartially. The inquiry must, of necessity, require an interrogation of the juror. The answers and demeanor of the juror must be considered by a careful trial court in making its decision and its decision must, of necessity, be based on those factors considered in light of the surrounding circumstances." *Thomas v. State,* 699 S.W.2d 845 (Tex.Cr. App.1985).

In the case at bar, the affected jury members were individually brought back to the courtroom for questioning regarding the alleged statement. The jury members stated in individual examinations that they had not been influenced in any way in the deliberations by any statements or influences other than the evidence before the court. We hold the trial court correctly made a finding that the jurors had not been affected by outside influences and were basing their verdict upon testimony in the case. This point of error is overruled.

The judgment of the trial court is **affirmed.**