ACCEPTED
06-15-00120-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/9/2015 2:54:35 PM
DEBBIE AUTREY
CLERK

# NO. 06-15-00120-CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

10/9/2015 2:54:35 PM

DEBBIE AUTREY
Clerk

# IN THE
# COURT OF APPEALS
# SIXTH SUPREME JUDICIAL CIRCUIT

## PATRICK STEWART
**Appellant**

## v.

## STATE OF TEXAS
**Appellee**

APPEAL FROM THE 87TH JUDICIAL DISTRICT OF
FREESTONE COUNTY, TEXAS
TRIAL COURT CAUSE NUMBER 14-153-CR

# BRIEF FOR APPELLANT

**LAW OFFICE OF STAN SCHWIEGER**
600 Austin Ave., Suite 12
P.O. Box 975
Waco, Texas 76703-0975
(254) 752-5678
(254) 752-7792—Facsimile
State Bar No. 17880500
E-mail: wacocrimatty@yahoo.com

## ORAL ARGUMENT CONDITIONALLY REQUESTED

## NAMES OF THE PARTIES TO THE FINAL JUDGMENT

### STATE OF TEXAS

**Trial**
Ms. Cari Meinen
Assistant District Attorney
Freestone County District Attorney's Office
118 East Commerce
Fairfield, TX 75840

**Appeal**
Mr. Christopher Martin
Freestone County District Attorney
118 East Commerce, Room 305
Fairfield, TX 75840

### APPELLANT'S COUNSEL

**Trial**
Mr. Lloyd Greg Tate
209 West State Street
Groesbeck, TX 76642

**Appeal**
Mr. Stan Schwieger
Law Office of Stan Schwieger
600 Austin Ave., Suite 12
P.O. Box 975
Waco, Texas  76703-0975

### TRIAL JUDGE

The Honorable Deborah Oakes Evans
87th District Court
118 East Commerce, Room 406
Fairfield, TX 75840

# TABLE OF CONTENTS

NAMES OF ALL PARTIES TO THE FINAL JUDGMENT.. . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

REQUEST FOR ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ISSUE RESTATED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.     Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.     Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.     Common law "presumptions" concerning burglary offenses simply are permissive inferences. . . . . . . . . . . . . . . . . . . . . . . 9

        2.     The record is void of any other evidence that can be used to show Mr. Stewart's intent upon entry into the building. . . . . . . . . . 12

    C.     Reversal is necessary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF COMPLIANCE WITH TEX.R.APP.P.9.4.

# INDEX OF AUTHORITIES

## FEDERAL CASES

*Francis v. Franklin*,
  471 U.S. 307 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jackson v. Virginia*,
  443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mullaney v. Wilbur*,
  421 U.S., 684 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sandstrom v. Montana*,
  442 U.S. 510 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Banks*,
  979 F.2d 1534 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATE CASES

*Bailey v. State*,
  722 S.W.2d 202 (Tex. App.—San Antonio 1986, no pet.). . . . . . . . . . . . 11

*Benavidez v. State*,
  No. 13-07-00670-CR, 2010 WL 5256355 (Tex. App.—Corpus Christi Dec. 16,
  2010, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Branch v. State*,
  No. 10-08-00118-CR, 2009 WL 400091 (Tex. App.—Waco Feb. 18, 2009, no
  pet). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Clark v. State*,
  543 S.W.2d 125 (Tex. Crim. App. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Draper v. State*,
  681 S.W.2d 175 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). . . . . 12

*Espinoza v. State*,
  955 S.W.2d 108 (Tex. App.—Waco 1997, pet. ref'd). . . . . . . . . . . . . . . . . 8

*Gear v. State*,
  340 S.W.3d 743 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . 7, 13, 14, 15

*Greer v. State*,
  437 S.W.2d 558 (Tex. Crim. App. 1969). . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Hardesty v. State*,
  656 S.W.2d 73 (Tex. Crim. App. 1983). . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Hooper v. State*,
  214 S.W.3d 9 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*J.N.C.B. v. Juvenile Officer*,
  403 S.W.3d 120 (Mo. Ct. App. 2013).. . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Johnson v. State*,
  665 S.W.2d 554 (Tex. App.—Houston [1st Dist.] 1984, no pet.). . . . . . . . . 8

*Knox v. State*,
  No. 07-11-00409-C, 2013 WL 5872924 (Tex. App.—Amarillo Oct. 29, 2013,
  no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*LaPoint v. State*,
  750 S.W.2d 180 (Tex. Crim. App. 1986). . . . . . . . . . . . . . . . . . . . . . . . . 10

*Laday v. State*,
  690 S.W.2d 53 (Tex. App.—Beaumont 1985, no pet.). . . . . . . . . . . . . . . . 8

*Macias v. State*,
  704 S.W.2d 484 (Tex. App.—Houston [14th Dist.] 1986, no pet.). . . . . . . 12

*Mauldin v. State*,
  628 S.W.2d 793 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . . . . . . . . . . 9

*McMillian v. State,*
      873 S.W.2d 62 (Tex. App.—Tyler 1993, pet. ref'd). . . . . . . . . . . . . . . . . 13

*Moss v. State,*
      574 S.W.2d 542 (Tex. Crim. App. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Saathoff v. State,*
      991 P.2d 1280 (Alaska Ct. App. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Solis v. State,*
      589 S.W.2d 444 (Tex. Crim. App. 1979). . . . . . . . . . . . . . . . . . . . . . 9, 14

*State v. Durham,*
      623 N.E.2d 1010 (Ill. App. Ct. 1993). . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Stearn v. State,*
      571 S.W.2d 177 (Tex. Crim. App. [Panel Op.] 1978). . . . . . . . . . . . . . . 12

## STATE STATUTES

Tex. Penal Code Ann. § 30.02(a)(1) (West 1974). . . . . . . . . . . . . . . . . . . . . . . . . 8

## MISCELLANEOUS

Charles R. Nesson,
      *Reasonable Doubt and Permissible Inferences: The Value of Complexity,* 92
      Harv. L. Rev. 1187 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## REQUEST FOR ORAL ARGUMENT

Appellant, Patrick Stewart requests that this appeal be presented on oral argument, only if the State requests and is granted oral argument.

## STATEMENT OF THE CASE

This is a criminal case, where Appellant was charged the offense of Burglary of a Building.[1] Trial began on January 13, 2015 in the 87th Judicial District Court of Freestone County, Texas, with the Honorable Deborah Oakes Evans presiding. After a trial to the jury, Appellant was found guilty of the indicted offense.[2] On May 19, 2015, the jury assessed the punishment at two (2) years State Jail Division in the Texas Department of Criminal Justice.[3] Notice of Appeal was timely filed on June 4, 2015.[4] The trial court's certification of Appellant's right to appeal was filed on May 19, 2015.[5]

---

[1]    (I C.R. at 40-41).

[2]    (I C.R. at 40-41).

[3]    (I C.R. at 40-41).

[4]    (I C.R. at 55-56).

[5]    (I C.R. at 51).

# ISSUES PRESENTED

The evidence is legally insufficient.

## STATEMENT OF THE FACTS

Johnny and Linda Burt lived in a rural part of Freestone County, particularly at 284 Farm Road 1124.[6]  On September 20, 2014 (at approximately 9:30[7] to 9:45 P.M.[8]) Mr. Burt and his wife were watching television.[9]  Mr. Burt noticed the "guard light" coming on outside.[10]  At that time, Mr. Burt stated that the defendant was standing at their "full glass door."[11]  What ensued was a strange conversation between the defendant Patrick Stewart and Mr. Burt: "he kept asking me that he was looking for Gate 7, and he mentioned several different names.  I said nobody here by that name, you are in the wrong place, would you leave my property."[12]  Believing that Mr. Stewart had plans on entering the home, Mr. Burt armed himself with a pistol.[13]

---

[6]     (2 R.R. at 89).

[7]     (2 R.R. at 120).

[8]     (2 R.R. at 106).

[9]     (2 R.R. at 90).

[10]    (2 R.R. at 90).

[11]    (2 R.R. at 90).

[12]    (2 R.R. at 91, 120–21).

[13]    (2 R.R. at 91).

The pair attempted to summon police by calling 911, with no results.[14] Cell phone service in this area is "not good" with the only working carrier being AT&T.[15]

After 30 to 40 minutes had passed, Mrs. Burke told her husband that "[Mr. Stewart] did not leave."[16] Driving about one quarter of a mile to a "shop" located on their property,[17] the pair turned on the headlights from the car upon reaching the shop.[18] When the headlights hit the door of the shop, Mr. Burt testified that Mr. Stewart came out of the building.[19] No forced entry was needed to get into the building because the door was not locked.[20]

Still armed with a pistol, Mr. Burt ordered Mr. Stewart "against the building," with his wife stating that they needed to call the police.[21] At that time, Mr. Burt stated he did not have his phone with him.[22] "And then [Mr. Stewart] said, I have got

---

[14]     (2 R.R. at 93). Apparently, officers responded to Mr. Stewart's abandoned car rather than the call for assistance from Mr. Burt. (2 R.R. at 107, 147).

[15]     (2 R.R. at 131-32).

[16]     (2 R.R. at 94).

[17]     The shop is about three- quarters of a mile from County Road 1124. (2 R.R. at 100).

[18]     (2 R.R. at 92–93).

[19]     (2 R.R. at 93). Mr. Stewart did not have permission to be inside the building. (2 R.R. at 101).

[20]     (2 R.R. at 124).

[21]     (2 R.R. at 93).

[22]     (2 R.R. at 94).

one.  And he reached into his pocket (indicating) and he came back with nothing . . . [Mr. Stewart reached into another pocket], and he gave me -- he dialed 9-1-1 for me and handed me the phone."[23]  When Mr. Stewart emerged from the building, he had a "money bag" containing records of a death from a funeral home.[24]  Other than the pouch, nothing was taken from the building.[25]  Purportedly, Mr. Stewart stated that the pouch had "deeds" proving that he had ownership to the property.[26]

Mr. Burt testified that "every drawer and box was open," tires were off a car found in the building, and items formerly in the car trunk were taken "off of it."[27]  In addition, a pistol typically located in a toolbox inside the building, with Mr. Burt claiming that "somebody" tried to put a "shell in it."[28]  An officer testified that the shop appeared to be "relatively well taken care of and somewhat organized."[29]  Furthermore, there were items that "seemed to be possibly out of place."[30]

---

[23]     (2 R.R. at 94).

[24]     (2 R.R. at 94–97).

[25]     (2 R.R. at 112).

[26]     (2 R.R. at 105).

[27]     (2 R.R. at 98).

[28]     (2 R.R. at 98).

[29]     (2 R.R. at 141).

[30]     (2 R.R. at 141).

The abandoned vehicle was located earlier that evening by Freestone County Sheriff's Deputies.[31] The vehicle was parked "in the middle-of-the-road and someone had called it in."[32] The car was impounded and an inventory taken of the vehicle.[33] No one was located near the car.[34] Mr. Stewart told officers that the reason he was in the building was "because he had a vehicle that had broken down the road, that he had ran out of gas, was looking for gas . . ."[35] No stolen items were found in the pickup seized by the deputies.[36]

---

[31]     (2 R.R. at 158).

[32]     (2 R.R. at 158).

[33]     (2 R.R. at 158).

[34]     (2 R.R. at 159).

[35]     (2 R.R. at 159).

[36]     (2 R.R. at 161).

## SUMMARY OF THE ARGUMENT

This is an unusual case in which there is no evidence that allows any inference about what Appellant intended to do within the building. As applicable here, as termed by former Texas Court of Criminal Appeals Judge Cathy Cochran, this case is typically controlled by the "don'cha know" standard – Appellant was found inside a building, therefore "don'cha know" he intended to commit theft.

However, this "standard" needs to join the typical support methods used to find "don'cha know"–on the legal heep of failed concepts. This does not require this Court to make sweeping changes in the law; merely correctly using an accurate label to discuss existing concepts will suffice.

The first example? The use of the term that it is ***presumed*** that unauthorized entry into a building a night is burglarious. Wrong. First, mandatory presumptions are not allowed in criminal law. Secondly, it is better classified as a nonbinding inference, one that will not carry the day past this Court's obligation to ensure a rational verdict.

The remainder of the facts demonstrate that Mr. Stewart's truck had broken down in the middle of nowhere. Stranded in an area with spotty cell service, Mr. Stewart began to search for assistance. Granted, the record shows a strange, if not bizarre approach to total strangers; for instance requesting to know where "Gate 9"

is. Nonetheless, the record, such as it is, fails to demonstrate that at the moment of entry, Mr. Stewart's intentions were to commit theft.

When applying a legal review, this Court is under an obligation to find that the State failed to produce adequate evidence to demonstrate that Mr. Stewart's guilty verdict was anything other than a product of jurors agreeing upon "don'cha" know.

**Issue Restated:**

The evidence is legally insufficient.

The State failed to show that Mr. Stewart had the requisite intent to steal when first entering the building. As such, this matter must be remanded for a judgment of acquittal.

### A. Standard of Review.

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.[37] This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[38] "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."[39]

---

[37] *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

[38] *Jackson*, 443 U.S. at 319.

[39] *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011).

## B.    *Argument.*

The elements of proof for burglary of a building with intent to commit theft are that (1) a person, (2) without effective consent, (3) enters a building not then open to the public, (4) with the intent to commit a theft.[40]  If a defendant does not have an intent to steal at the time, his presence on the premises becomes unlawful, he cannot be convicted of burglary.[41]  The intent to commit a further crime must coexist with the initial criminal trespass.[42]  As such, intent, as an essential element of the offense of burglary, must be proved by the State beyond a reasonable doubt; it may not be left simply to speculation and surmise.[43]  Intent may be established by circumstantial evidence.[44]

---

[40]    *Johnson v. State*, 665 S.W.2d 554, 556 (Tex. App.—Houston [1st Dist.] 1984, no pet.) (citing TEX. PENAL CODE ANN. § 30.02(a)(1) (West 1974)).

[41]    *Laday v. State*, 690 S.W.2d 53, 55 (Tex. App.—Beaumont 1985, no pet.) (stating that an essential element of a charge on the offense of burglary of a building, as charged in the instant case, is that such is committed with "intent to commit a felony or theft.").

[42]    Section 30.02 of the Penal Code lists three distinct ways a burglary may be committed.  If a defendant is charged with burglary under the initial two subsections of (a), the State is required to prove the defendant's intent to commit a felony or theft at the time the defendant entered or remained concealed in a habitation or building.  *Espinoza v. State*, 955 S.W.2d 108, 111 (Tex. App.—Waco 1997, pet. ref'd); *see also Saathoff v. State*, 991 P.2d 1280, 1285, 661 (Alaska Ct. App. 1999); *accord State v. Durham*, 623 N.E.2d 1010, 1013 (Ill. App. Ct. 1993) ("A criminal intent formulated after a lawful entry will not satisfy the statute.")

[43]    *Greer,* 437 S.W.2d at 559–60.

[44]    *Knox v. State*, No. 07-11-00409-CR, 2013 WL 5872924, at *3 (Tex. App.—Amarillo Oct. 29, 2013, no pet.) (mem. op., not designated for publication).

### 1. *Common law "presumptions" concerning burglary offenses simply are permissive inferences.*

A number of cases have held that an entry into a building, when made without consent in the nighttime, is "presumed" to have been made with intent to commit theft.[45] This is the legal equivalent of an old wives tale, and is not supportable under current law.

A true presumption is a rule of law laid down by the courts which attaches to facts certain procedural consequences, such as the shift in the burden of evidence production: when fact A is established, the fact finder must find fact B, unless the opponent introduces evidence from which the fact finder could reasonably find that B did not exist.[46] Distantly related is the term "permissible inference" which is a deduction from the facts which the fact finder may draw from the circumstances of the case without the aid of any rule of law, but is not obligated to do so.[47]

To find that burglary has been committed there must be evidence not only showing burglarious entry, but also that the party at the time he entered had specific

---

[45] *See, e.g., Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982); *Solis v. State*, 589 S.W.2d 444, 446 (Tex. Crim. App. 1979); *Moss v. State*, 574 S.W.2d 542, 544 (Tex. Crim. App. 1978); *Clark v. State*, 543 S.W.2d 125, 128 (Tex. Crim. App. 1970).

[46] *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983) (en banc).

[47] *Id.*

intent to commit theft as alleged in the indictment.[48] Nothing in the burglary statutes indicates that a presumption from the evidence arises with regard to proof of intent as an essential element of burglary.[49] In fact, the evidentiary "presumption" or permissive inference was never intended to relieve the prosecution of proving every element of a crime beyond a reasonable doubt or to be used in a jury charge for that purpose.[50]

Furthermore, to use the theory of entry at night to presume the intent to steal would be contrary to pronouncements from the United State Supreme Court. The Court has explicitly held unconstitutional a mandatory rebuttable presumption that shifted to the defendant a burden of persuasion on the question of intent,[51] as are instructions that might reasonably have been understood by the jury as creating a mandatory rebuttable presumption were unconstitutional.[52] Along these same lines, in *Hardesty*, the Court of Criminal Appeals labeled "recent unexplained possession

---

[48]   *Greer v. State*, 437 S.W.2d 558, 560 (Tex. Crim. App. 1969).

[49]   *LaPoint v. State*, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986) (en banc).

[50]   *Francis v. Franklin*, 471 U.S. 307, 314 (1985).

[51]   *Mullaney v. Wilbur*, 421 U.S., 684, 698–701 (1975).

[52]   *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979).

of stolen goods" as a permissible inference "merely a circumstance of guilt and [is] not conclusive."[53]

Rather, as a matter of constitutional necessity, where there is no other evidence to bolster a permissible inference, the facts proven for purposes of the inference must establish the element to which the inference is relevant beyond a reasonable doubt.[54] To hold otherwise would permit the State to establish an essential element of a crime by evidence that, standing alone, does not fairly support an inference of intent.[55] Thus, this Court must properly use the *inference* of entry at night in a lawful manner.

Here, the evidence shows that the defendant was found in the building at night.[56] However, a fact finder is not forced to convict the defendant, the burden of proof is not shifted, and the State must still prove each element of the crime beyond a reasonable doubt.[57] Moreover, a deduction of guilt drawn from a defendant's from this inference acts merely a circumstance of guilt and is not conclusive.[58] Once the

---

[53]     *Id.* at 77.

[54]     *J.N.C.B. v. Juvenile Officer*, 403 S.W.3d 120, 128, 4644 (Mo. Ct. App. 2013).

[55]     *Bailey v. State*, 722 S.W.2d 202, 204 (Tex. App.—San Antonio 1986, no pet.). (holding that non-consensual nighttime entry is simply a circumstance from which the trier of fact may or may not infer an intent to commit theft).

[56]     *See* Appellant's Br. at 2.

[57]     *Hardesty*, 656 S.W.2d at 77.

[58]     *Id.*

permissible inference arises, the sufficiency of the evidence must still be examined according to applicable standards of appellate review.[59] As such, the remainder of the record must demonstrate that the Appellant had the intent to commit theft upon entry into the building.

### 2. The record is void of any other evidence that can be used to show Mr. Stewart's intent upon entry into the building.

A defendant's burglarious entry and his intent to commit theft may be inferred from circumstantial evidence.[60] Mr. Stewart will attempt to gather some of the facts used to satisfy this element.

Circumstances used to infer guilt in burglary cases include cases where there are signs of forced entry (with the tools used to enter) which were found near the entry location supporting intent.[61] There is no indication of forced entry into the building to support this inference.[62] In addition, flight from the crime scene, combined with an unlawful entry has been found to be sufficient to circumstantially

---

[59] *Id.*

[60] *Stearn v. State*, 571 S.W.2d 177, 177-78 (Tex. Crim. App. [Panel Op.] 1978)

[61] *See Macias v. State*, 704 S.W.2d 484, 485–86 (Tex. App.—Houston [14th Dist.] 1986, no pet.)

[62] (2 R.R. at 124).

prove intent.[63]   However, it has been observed that the lack of flight "under certain designated circumstances" indicates "one is not guilty and thus there is no fear of arrest or conviction."[64] Mr. Stewart being at gunpoint may explain his lack of flight.[65] However, it does not explain the use of his own cell phone to summon authorities.[66]

Furthermore, the transferring court has used direct statements from the defendant to support an inference of theft.   Where a defendant and the purported victim discussed whether the defendant would have been able to "clean [her] house out" if she had not been there, the transfer court found, *inter alia*, sufficient evidence to establish intent to steal.[67]   Mr. Stewart made no such confession to the offense in question.

---

[63]     *Draper v. State*, 681 S.W.2d 175, 177 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd); *see also Durham*, 623 N.E.2d at 1014 ("[The defendant] may have taken advantage of the opportunity to commit larceny, but his presence in the store is as consistent with his innocence as with his guilt of the criminal intent at the time of his entry.").

[64]     *United States v. Banks*, 979 F.2d 1534, *6 (5th Cir. 1992) (not designated for publication in the Federal Reporter).

[65]     (2 R.R. at 94); *see also McMillian v. State*, 873 S.W.2d 62, 64 (Tex. App.—Tyler 1993, pet. ref'd) (holding that circumstantial evidence of entry included defendant's hasty retreat in car from burglary scene).

[66]     (2 R.R. at 94).

[67]     *Branch v. State*, No. 10–08–00118–CR, 2009 WL 400091, at *2 (Tex. App.—Waco Feb. 18, 2009, no pet) (mem. op., not designated for publication).

Gathering these inferences, the Texas Court of Criminal Appeals, upholding the defendant's conviction, was swayed by several applicable inferences.[68] First the Court of Criminal Appeals found the defendant was "interrupted as he was attempting to enter the complainant's home immediately after he had broken the complainant's window, at which time he ran."[69] The Court further considered "the additional evidence of appellant's joblessness, his lack of transportation and funds, his 'implausible' and inconsistent explanations for his conduct, and his flight upon being interrupted by the complainant" relevant to determining intent.[70]

The facts in this case diverge from those in *Gear*. As pointed out previously, there was no forced entry in this matter.[71] Secondly, the lack of transportation in this matter was due to a broken down car located in the area of the purported offense.[72] There is no implausible or inconsistent explanation for the conduct; in fact it is perfectly consistent with attempting to seek help with his stranded vehicle.[73]

---

[68]    *See generally Gear*, 340 S.W.3d at 747–48.

[69]    *Id.* at 747.

[70]    *Id.* at 748.

[71]    (2 R.R. at 124).

[72]    (2 R.R. at 159).

[73]    (2 R.R. at 159).

This is an unusual case in which there is no evidence that allows any inference about what Appellant intended to do within the building. As applicable here, this is a "don'cha know" standard – Appellant was found inside this building, therefore "don'cha know" he intended to commit theft.[74] The actor's behavior was "sufficiently inexplicable that reasonable doubt remains as to what his specific criminal intentions actually were.[75]

To be sure, by a process of elimination, a rational trier of fact could conclude that Appellant's intentions were not honorable. While the fact finder's prerogative to choose among plausible and rational readings of the evidence is beyond appellate review, there must still be some evidence to prove the essential elements of the offense and a verdict must be supported by a reasonable inference.[76] As such, the evidence sufficient in quality, character, or weight under the rigorous standards of review set forth by the Court of Criminal Appeals simply does not exist here. In other words, "the concept of reasonable doubt is inconsistent with a procedure that permits an otherwise unassisted leap from aggregate likelihood to a conclusion of guilt."[77]

---

[74]    *Gear*, 340 S.W.3d at 749 (Cochran, J., dissenting).

[75]    *Solis*, 589 S.W.2d at 446–47.

[76]    *Gear*, 340 S.W.3d at 749 (Cochran, J., dissenting).

[77]    Charles R. Nesson, *Reasonable Doubt and Permissible Inferences: The Value of Complexity*, 92 HARV. L. REV. 1187, 1208 (1979).

## C. Reversal is necessary.

When the evidence is not legally sufficient to support a defendant's conviction this Court must reverse the case, vacate the trial court's judgment of conviction, and remand the case to the trial court for the entry of a judgment of acquittal.[78]

---

[78] *Benavidez v. State*, No. 13-07-00670-CR, 2010 WL 5256355, *4 (Tex. App.—Corpus Christi Dec. 16, 2010, no pet.) (mem. op., not designated for publication).

## PRAYER FOR RELIEF

For the reasons alleged above, Appellant was denied a fair trial. Thus, this Honorable Court must remand this matter to the trial court with orders to enter a judgment of acquittal.

Respectfully submitted,

**LAW OFFICE OF STAN SCHWIEGER**


*/s/ Stan Schwieger*
Stan Schwieger
600 Austin Avenue, Suite 12
P.O. Box 975
Waco, Texas 76703-0975
(254) 752-5678
(254) 752-7792—Facsimile
E-mail: wacocrimatty@yahoo.com
State Bar No. 17880500
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF SERVICE

On October 9, 2015, a copy of this brief has been delivered by Appellant's electronic filing service to the Christopher Martin, Freestone County District Attorney's Office, Fairfield, Texas, attorney of record for the State of Texas at christopher.martin@co.freestone.tx.us .

*/s/ Stan Schwieger*
Stan Schwieger

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4**
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.   This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) exempted by TEX. R. APP. P. 9.4(i)(1), as it contains 3314 words.

2.   This brief complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been produced on a computer in conventional typeface using WordPerfect X6 in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.

3.   This electronically filed brief is free from any computer viruses, malware or other harmful programs.

*/s/ Stan Schwieger*
Stan Schwieger